# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE, KNOXVILLE DIVISION

| | |
|---|---|
| TENNESSEE VALLEY FINANCIAL HOLDINGS, INC. and TNBANK OF OAK RIDGE, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) No. _____ |
| BANCINSURE, INC. | ) **JURY DEMANDED** |
| Defendant. | ) |

## COMPLAINT

Come Tennessee Valley Financial Holdings, Inc. and TNBank of Oak Ridge (collectively the "Plaintiffs"), by and through counsel, and state the following for their cause of action against BancInsure, Inc. ("Defendant"):

### I. PARTIES, VENUE AND JURISDICTION

1. Tennessee Valley Financial Holdings, Inc. is a Tennessee corporation with a principal office located at 401 South Illinois Avenue, Oak Ridge, Tennessee 37830.

2. TNBank of Oak Ridge ("TNBank") is a Tennessee bank wholly owned by Tennessee Valley Financial Holdings, Inc., with a principal office located at 401 South Illinois Avenue, Oak Ridge, Tennessee 37830.

3. Defendant is a foreign insurance company who may be served with process through its registered agent, Lisa G. Bays, at 514 North Francis Avenue, Suite 101, Oklahoma City, Oklahoma 73118.

4. Plaintiffs aver that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy is over $75,000.00.

1

5.  Plaintiffs aver that this Court has personal jurisdiction over Defendant because Defendant transacts business in the Eastern District of Tennessee and issues policies of insurance in the Eastern District of Tennessee, including the insurance bond upon which this suit is based.

6.  Plaintiffs aver that venue is proper before this Court pursuant to 28 U.S.C. § 1391 because Defendant issued an insurance bond, upon which this suit is based, to Plaintiffs in the Eastern District of Tennessee and the events giving rise to Plaintiffs' claim under said insurance bond took place in the Eastern District of Tennessee.

## II. FACTS

7.  Defendant issued a Financial Institution Bond, Bond No. 41FIB00195-5, to Plaintiffs, with a policy period from May 8, 2007 to May 8, 2010 (the "Bond"). A true and exact copy of the Bond is attached hereto as **Exhibit A**.

8.  The Bond insures Plaintiffs from, *inter alia*, certain dishonest or fraudulent acts of their employees. The Bond's dishonesty insuring agreement provides coverage for the following:

> (A) DISHONESTY
>
> Loss resulting directly from dishonest or fraudulent acts committed by an Employee acting alone or in collusion with others.
>
> Such dishonest or fraudulent acts must be committed by the Employee with the manifest intent:
>
> (a) to cause the Insured to sustain such loss, or
> (b) to obtain improper financial benefit for the Employee or another person or entity.
>
> However, if some or all of the Insured's loss results directly or indirectly from Loans, that portion of the loss is not covered unless the Employee was in collusion with one or more parties to the transactions and has received, in connection with these transactions, an improper financial benefit.

(The "Dishonesty Provision").

2

9. At all times material, Braxton L. "Gus" Sadler ("Mr. Sadler") was an employee of TNBank and was an "Employee," as that term is defined, for the purposes of the Bond. Mr. Sadler was a senior vice-president and senior loan officer for TNBank.

10. TNBank, through Mr. Sadler, had a loan relationship with Eddie M. DeBord, Julia M. DeBord (the "DeBords"), and companies affiliated with the DeBords (the "DeBord Entities"). Mr. Sadler's relationship with the DeBords extended beyond the normal relationship maintained by a loan officer and his/her customers.

11. Through his relationship with the DeBords, Mr. Sadler was aware of the DeBords' financial condition and failed to disclose material information about their financial condition to TNBank's senior management.

12. In his capacity as a loan officer for TNBank, Mr. Sadler obtained extensions of credit to, and approved overdrafts for, the DeBords and the DeBord Entities totaling $2,095,688.96 without proper authorization.

13. Mr. Sadler obtained approval of the credit extensions using misrepresentations and by failing to disclose material information to TNBank's loan committee. Mr. Sadler also made credit extensions that were not properly approved by TNBank's loan committee and caused overdrafts to be paid and/or cleared outside of TNBank's established policies and procedures.

14. Mr. Sadler made the credit extensions and approved the overdrafts with the knowledge that the DeBords and the DeBord Entities would not be able to repay the same.

15. Had Mr. Sadler followed proper bank procedures and disclosed his knowledge of the true state of the DeBords' and the DeBord Entities' financial condition, TNBank would not have approved the extensions of credit or the overdrafts.

16. The DeBords enabled and participated with Mr. Sadler in wrongfully obtaining the unauthorized extensions of credit from TNBank, which included clandestine meetings with Mr. Sadler and a shared knowledge that the credit extensions/overdrafts could not be repaid. For example, Mr. Sadler went to the DeBords home on a New Year's Eve to obtain their signatures on loan documents, which was outside the normal procedure for closing a loan transaction. Additionally, Mr. Sadler went as far as making one or more personal loans to the DeBords, which loan proceeds were used, at least in part, to make payments on the unauthorized loans to the DeBords and the DeBord Entities, all in an effort to hide the DeBords' inability to repay the loans and to hide the scheme orchestrated by Mr. Sadler and the DeBords.

17. Upon information and belief, Mr. Sadler received monetary and other consideration from the DeBords in connection with his efforts in procuring the unauthorized extensions of credit, including receipt of interest payments of the personal loan from Mr. Sadler to Mr. DeBord. Neither Mr. Sadler nor Mr. DeBord disclosed their personal lender/borrower relationship to TNBank and they agreed not to disclose this personal loan relationship.

18. Mr. Sadler's material misrepresentations, failure to disclose material information, unauthorized actions, and his personal and financial relationship with the DeBords constitute a willful breach of his duties as a loan officer and an employee of TNBank.

19. Based upon Mr. Sadler's knowledge of the DeBords' financial condition, Mr. Sadler knew the DeBords' could not repay the loans or the overdrafts when he made, approved, and/or renewed the same and, therefore, consciously caused a loss to TNBank and obtained an improper benefit for himself, the DeBords, and the DeBord Entities.

4

Case 3:12-cv-00380-PLR-DCP Document 1 Filed 07/23/12 Page 4 of 6 PageID #: 63

20. As a direct result of Mr. Sadler's material misrepresentations and material omissions, Plaintiffs lost $1,012,631.40 in credit extensions and overdrafts to the DeBords and the DeBord Entities that TNBank would not have otherwise made, plus accruing interest.

21. As a condition precedent to its bond claim against Defendant, Plaintiffs submitted a proof of loss, dated January 26, 2010, to Defendant, asserting that the loss described in Paragraph 20 herein was covered by the Dishonesty Provision. By letter dated July 26, 2010, Defendant denied coverage under the Bond. Plaintiffs have complied with all other conditions precedent under the Bond.

### III. CLAIMS FOR RELIEF

22. Based upon the foregoing, Plaintiffs aver that the loss caused by Mr. Sadler falls squarely within the Bond's Dishonesty Provision. Therefore, Plaintiffs aver that Defendant has breached its duty to cover Plaintiffs' losses under the Bond, which entitles Plaintiffs to a judgment against Defendant.

23. The Bond provides that Plaintiffs are entitled to attorney's fees associated in preparing claims for loss caused by any dishonest or fraudulent act of Plaintiffs' employees.

WHEREFORE, premises considered, Plaintiffs pray as follows:

1. That proper process issue and a copy of the Summons and this Complaint be served upon Defendant requiring it to answer within the time required by law.

2. That Plaintiffs be awarded a judgment against Defendant in the amount of $1,012,631.40, plus pre- and post-judgment interest and attorney's fees.

3. That costs of this cause be taxed against Defendant.

4. That Plaintiffs have such other further and general relief to which it is warranted by the premises.

5. That a jury be empaneled to hear and decide this case.

/s/Oliver D. Adams
Thomas H. Dickenson, BPR# 006844
Oliver D. Adams, BPR# 026164
Attorneys for Plaintiffs
HODGES, DOUGHTY & CARSON, PLLC
617 West Main Street
P.O. Box 869
Knoxville, TN 37901-0869
(865) 292-2307